# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| VICTORIA M.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 21-1136-JWL |
| KILOLO KIJAKAZI,[2] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614, Title XVI of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed applications for SSI benefits on March 4, 2019.  (R. 12, 234).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in finding the medical opinions of Dr. Neufeld, the psychologist who examined the plaintiff at the request of the agency, "generally persuasive" but failing to resolve the inconsistencies between that opinion and the residual functional capacity (RFC) assessed.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the

Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, the claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

**II.  Discussion**

Plaintiff claims the ALJ's limitation to frequent interaction with coworkers and supervisors is inconsistent with Dr. Neufeld's opinion because "Dr. Neufeld opined [Plaintiff] was capable of only occasional interactions with coworkers and supervisors," and because he opined Plaintiff "would have 'at least some difficulty with frequent interpersonal interactions, especially in maintaining good relationships as time goes on (e.g., over weeks, months, and years).'"  (Pl. Br. 11) (citing R. 635).  Plaintiff argues that although the limitations assessed by the ALJ were the same as those assessed by the state agency psychological consultants, "the ALJ was still required to resolve the inconsistency

in the record after finding both Dr. Neufeld's opinion and the State agency consultants' opinions persuasive." (Pl. Br. 12) (citing Gaye Raynae A. v. Saul, No. 20-2021-JWL, 2020 WL 6059731, at *3-4 (D. Kan. Oct. 14, 2020)).

Plaintiff argues that a limitation to only occasional interaction with coworkers and supervisors is consistent with the record evidence including Dr. Neufeld's examination, Plaintiff's reports to her treatment providers, LSCSW Jordan's opinion of marked and extreme limitations, Plaintiff's employer's report, and Plaintiff's testimony and Function Report. Id. at 12-14. Finally, she argues this error is not harmless because "the social limitations in the RFC directly conflicted with the persuasive opinion of Dr. Neufeld. And the vocational expert testified that there would be no work available for an individual who could have less than occasional contact with coworkers and supervisors as such a limitation indicated the individual would need to work in isolation." Id. at 14.

The Commissioner responds that the ALJ's decision is supported by Plaintiff's part-time work and other activities throughout the period of alleged disability. (Comm'r Br. 7). She argues that the ALJ's decision is consistent with and supported by the prior administrative medical findings of Dr. Locke and Dr. Lark the state agency psychologists who had reviewed the record evidence including Dr. Neufeld's opinion and opined that Plaintiff is capable of frequent contact with coworkers and supervisors. Id. at 7-8. She argues the ALJ's RFC finding does not conflict with Dr. Neufeld's opinion because he opined that Plaintiff "remain[ed] capable of at least occasional interactions with coworkers, supervisors, and the general public." Id. at 8 (quoting R. 635) (emphasis in Comm'r Br.). She argues there is no conflict with Dr. Neufeld's opinion of "at least

5

some difficulty with frequent interpersonal interactions, especially in maintaining good relationships as time goes on (e.g., over weeks, months, and years)" (R. 635) (emphasis in Comm'r Br.), because "Dr. Neufeld did not exclude frequent interactions with coworkers or supervisors; he only said he expected Plaintiff would have 'some difficulty' with such interactions, over time. (Comm'r Br. 9) (quoting R. 635). She finally argues that even if Plaintiff were limited to occasional contact with coworkers and supervisors it would make no difference in this case because the vocational expert (VE) testified that "only less than occasional interaction with coworkers and supervisors would preclude performance of" the representative jobs testified. Id. at 10 (emphasis in Comm'r Br.).

In reply Plaintiff reiterated her argument. She also recognized the Commissioner's argument the ALJ relied on the state agency consultants' opinions as persuasive but argues "this finding did not resolve the inconsistency in the ALJ's own findings" and is unexplained by the state agency consultants or by the ALJ. (Reply 2-3). She argues that had the ALJ accounted for Dr. Neufeld's opinion Plaintiff "would have difficulty with frequent interactions with coworkers and supervisors," he would have found her ability for interaction would deteriorate over time, and the VE "testified that less than occasional interaction with coworkers and supervisors would preclude performance of the jobs cited." Id. at 3.

### A.     The ALJ's Findings

The ALJ found Plaintiff has three mental impairments that are severe within the meaning of the Act; major depressive disorder, social anxiety, and a personality disorder. (R. 15). At step three of the sequential evaluation process the ALJ evaluated Plaintiff's

mental impairments in each of the Commissioner's four broad mental functional areas and found her mental impairments do not meet or medically equal the severity of any mental impairments in the Listing of Impairments. (R. 15-17). As relevant, he found:

> In the ability to interact with others, the claimant has moderate difficulties. The evidence in the record, including the claimant's statements, shows that the claimant is, for the most part, capable of interacting independently, appropriately, effectively and on a sustained basis. However, she would have some limitations in interacting and relating with the public, coworkers, and supervisors.

(R. 16). He found Plaintiff "can tolerate occasional interaction with the public and frequent interaction with coworkers and supervisors." Id. at 17 (finding no. 4, bold omitted). The ALJ found Plaintiff's allegations of symptoms could be caused by her impairments, but after considering all of the record evidence he found the allegations not consistent with the medical evidence or with the other evidence in the record. Id. at 18.

> The ALJ summarized the report of Dr. Neufeld's examination:
>
> During the May 2019 interview, [Plaintiff] appeared disheveled with fair to poor grooming and hygiene, but she established sufficient rapport with the examiner and was open in her response to questions. The claimant exhibited mildly pressured speech, circumstantial thoughts, a generally anxious affect, and saddened when discussing her recent mood. However, she was redirectable, exhibited appropriate eye contact, and occasionally engaged in self-deprecating laughter. Despite mildly rapid mentation, she demonstrated no gross mental confusion, recalled two out of three objects given after several minutes, performed serial seven subtractions, recited the days of the week in reverse and recited six digits forward and four digits backward. Thus, the clinical signs and findings observed during the consultative examination are inconsistent with more than moderate psychological limitations.

(R. 20) (citation omitted). The ALJ explained he found Plaintiff's

> activities of daily living and work history are inconsistent with disabling mental impairment. For instance, the claimant reported working part-time

> with the assistance of Vocational Rehabilitation, but she was hired at her current job before she began working with Vocational Rehabilitation. Moreover, her supervisor noted she generally stayed on task without special supervision and only occasionally needed expectations repeated. Her supervisor also indicated she could be easily stress[ed] and argumentative, but she puts forth a good effort to complete her work. In addition to her part-time job, she reported engaging in basic daily activities, including shopping, driving, caring for her "support" cat, using social media, and playing video games. The ability to engage in and complete these tasks is inconsistent with disabling mental impairment.

(R. 20-21) (citations omitted).

The ALJ also explained his consideration of the persuasiveness of the prior administrative medical findings and medical opinions of the mental healthcare specialists. Id. at 21. He found the March 2020 opinion of LSCSW Potter "unpersuasive because it does not suggest how her symptoms limit her functioning and how they would improve with use of an emotional support animal." Id. He found the opinion of LSCSW Jordan, Plaintiff's therapist, unpersuasive because her "findings are inconsistent and unsupported by Ms. Jordan's own treatment notes, which are discussed in detail above, and this opinion is inconsistent with the claimant's conservative treatment history." Id. He explained why he found the opinions of the state agency psychological consultants persuasive:

> These opinions are supported by narrative reports of the evidence considered and they are consistent with the clinical signs and findings, including a variable mood and affect, pressured or tangential speech, and normal cognition although the undersigned finds the claimant has moderate limitations in her ability to adapt or manage herself secondary to poor compliance with prescribed treatment.

Id. He also explained his evaluation of Dr. Neufeld's opinion:

8

> The psychological consultative examiner opined that the claimant is capable of following at least 3-4 step instructions over a 40-hour week, at least occasional interaction with coworkers, supervisors, and the public although she would have difficulty with frequent interpersonal interactions and maintaining good relationships as time goes on. This opinion is generally persuasive because it is consistent with the clinical signs and findings, including a variable mood and generally normal cognition, and the claimant's activities of daily living, including her ability to drive, shop, and use social media.

(R. 21) (citation omitted).

### **B.**     **Analysis**

As Plaintiff points out, Social Security Ruling (SSR) 96-8p requires an ALJ to include a narrative discussion within his RFC assessment and which, as relevant here, includes an explanation how he considered and resolved any ambiguities and material inconsistencies in the evidence and why he did not adopt any medical opinion which conflicts with the RFC assessed. 1996 WL 374184, *7 (SSA July 2, 1996). As quoted above, the ALJ included an explanation as to why he found Dr. Neufeld's opinion only "generally persuasive." (R. 21). Thus, the ALJ erred only to the extent there remain ambiguities and material inconsistencies in the evidence for which the decision does not explain his consideration and resolution. The court finds there do not.

As both parties quote, at least in part, Dr. Neufeld opined Plaintiff "remains capable of at least occasional interaction with coworkers, supervisors and the general public. The presence of psychological concerns outlined above would be expected to result in at least some difficulty with frequent interpersonal interactions, especially in maintaining good relationships as time goes on (e.g., over weeks, months, and years)." (R. 635). The state agency psychological consultants, both of whom are psychologists

expert in the SSA's regulations and the evaluation of disability within the meaning of the Act and regulations and had reviewed Dr. Neufeld's examination report, found Plaintiff's social interaction limitations allow her to "work in settings requiring only occasional interaction w[ith] GP [(general public)] and frequent interaction w[ith] coworkers and supervisors." (R. 94, 113). As noted above, the ALJ evaluated the opinions of all three psychologists and found the consultants' opinions persuasive and Dr. Neufeld's opinion only "generally persuasive." Id. at 21. There is no ambiguity or material inconsistency here. The ALJ found the consultants' opinions more persuasive than the opinion of Dr. Neufeld. Moreover, especially in the circumstances as outlined in this paragraph, Plaintiff has shown no inconsistency, certainly no material inconsistency, between the RFC assessed and Dr. Neufeld's opinion. Dr. Neufeld addressed social interaction as a concept relating to a single group consisting of coworkers, supervisors, and the public. He opined that Plaintiff would be able to interact with this group more than ("at least") occasionally (in vocational terms, up to one-third of a workday) but if dealing with this group frequently (in vocational terms, up to two-thirds of a workday) Plaintiff would have "some difficulty" maintaining good relationships as time goes on. (R. 635). The state agency consultants and the RFC assessed by the ALJ address social interaction as a concept relating to at least two groups, (1) the general public and (2) coworkers and supervisors and found that Plaintiff might interact with the general public (the larger group) only occasionally, and with coworkers and supervisors (a smaller group) frequently. (R. 17, 94, 113). While Plaintiff argues that this is inconsistent with Dr. Neufeld's opinion, and while one might rationally find it is, the consultants and the ALJ's

view of the evidence, including Dr. Neufeld's report and opinion, is also a rational view and Plaintiff has not shown that the evidence compels her view of Dr. Neufeld's opinion. Having failed to show an inconsistency or ambiguity, Plaintiff cannot show a need for further explanation.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated July 12, 2022, at Kansas City, Kansas.

                                                  s/ John W. Lungstrum
                                                  **John W. Lungstrum**
                                                  **United States District Judge**